UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALISA BALLARD DUNLAP, | ) | Case No. 5:18CV2275 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Alisa Dunlap (formerly Alisa Ballard, hereinafter, "Dunlap" or "claimant")

challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"),

denying (in part) her applications for a period of disability, disability insurance benefits ("DIB"),

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This court has jurisdiction pursuant to 42 U.S.C.

§ 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an

automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported

by substantial evidence and, therefore, conclusive.  For the reasons set forth below, the

Magistrate Judge recommends that the Commissioner's final decision be affirmed.

## I.  PROCEDURAL HISTORY

On July 12, 2007, Dunlap filed applications for a period of disability and DIB, and, on

June 23, 2007, an application for SSI benefits, with both applications alleging disability

beginning January 1, 2006.  (R. 12, Transcript ("tr."), at 18, 141-144, 145-147, 1247.)  Dunlap's

applications were denied initially and upon reconsideration.  (R. 12, tr., at 18, 112-122.)  After a

hearing, the ALJ issued the first decision on October 14, 2010, applying the standard five-step sequential analysis to determine whether Dunlap was disabled.  (R. 12, tr., at 18-25; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).)  The ALJ concluded Dunlap was disabled beginning on January 1, 2009, but was not disabled prior to that date.  *Id.* at 25.  The Appeals Council denied Dunlap's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (R. 12, tr., at 1-3.)

The district court vacated the decision regarding 2006 through 2008, and remanded for a new hearing and decision.  (R. 12, tr., at 1228-1233; *Ballard v. Astrue*, No. 5:11CV2583 (N.D. Ohio Mar. 12, 2013) (Order).)  The Order states:

> . . . the Court REVERSES the Commissioner's decision to deny Ballard's [Dunlap's] application for disability insurance benefits for years 2006 through 2008, REMANDS the case to the ALJ under sentence four of 42 U.S.C. § 405(g), and DIRECTS the ALJ to properly re-evaluate the evidence, including additional evidence, at step one of SSR [Social Security Ruling] 83-34 and to proceed through all steps of the disability analysis for years 2006 through 2008 only.

*Id.* at 1232-1233.

On August 28, 2013, the Appeals Council remanded the case to the ALJ for further proceedings consistent with the order of the court.  (R. 12, tr., at 1247-1248.)  The Appeals Council directed the ALJ to:

> Give further consideration to the issue of whether claimant's work activity during the years 2006 through 2008 constituted substantial gainful work activity (Social Security Ruling 83-34).
>
> Give consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitation (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).
>
> Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).

*Id.* at 1248.

A different ALJ held a new hearing on April 21, 2015.  (R. 12, tr., at 1133-1188.)

Dunlap, an attorney, appeared at the hearing without counsel, and testified.  (*Id.* at 1136, 1139-

1174, 1179-1180, 1182-1183.)  A vocational expert ("VE") also attended the hearing and

provided testimony.  (*Id.* at 1136, 1174-1187.)  On August 12, 2015, the ALJ issued the second

decision, applying the standard five-step sequential analysis to determine whether Dunlap was

disabled.  (R. 12, tr., at 1108-1123; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).)

Based on this review, the ALJ concluded Dunlap was not disabled for the period at issue, 2006

through 2008.  (R. 12, tr., at 1108, 1123.)  The Appeals Council determined that the ALJ's

decision was the final decision of the Commissioner.  (R. 12, tr., at 1094-1095.)  Dunlap now

seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The

parties have completed briefing in this case.

## II.  ALJ's DECISION

The ALJ's August 12, 2015 decision confirmed that "[p]ursuant to the District Court

remand order, the Appeals Council has directed [the ALJ] to analyze the claimant's earnings

from January 1, 2006, through December 31, 2008, and pending the outcome of that analysis, to

complete the standard five-step sequential evaluation as to the period January 1, 2006 and

concluding December 31, 2008."  (R. 12, tr., at 1108 *see also id.* at 1135.)  The ALJ continued:

"Because it is found that the claimant did engage in substantial gainful activity during the whole

of 2006 and the whole of 2008, the five-step sequential analysis is confined to the period

beginning on January 1, 2008 [*sic*], and ending on December 31, 2007."  *Id.* at 1108, *see also id.*

at 1110.  The ALJ then made the following findings of fact and conclusions of law:

> 1.  The claimant meets the insured status requirements of the Social Security Act
> (the "Act") through October 1, 2008 and through March 31, 2017 for Medicare
> only.

2.  The claimant engaged in substantial gainful activity during the following periods:  January 1, 2006 through December 31, 2006, and January 1, 2008 through December 31, 2008.  (20 C.F.R. 404.1520 (b),  404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3.  However, there has been a continuous 12 month period(s) during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.  The claimant has the following severe impairments: migraine headaches, chronic irritable colon/irritable bowel syndrome, adjustment disorder with mixed anxiety and depressed mood, major depressive disorder-recurrent, with psychotic features, and panic disorder with agoraphobia (20 C.F.R. 404.1520(c) and 416.920(c)).

5.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

6.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in  20 CFR 404.1567(b) and 416.967(b) except that the claimant may frequently handle and finger with the left [hand] and may not engage in rapid, repetitive movements with the left [hand]; the claimant is limited to the performance of work tasks undertaken in a setting that involves no more than occasional interaction with coworkers and the public, which setting is low stress, defined as precluding tasks that involve high production quotas or fast paced production demands.

7.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

8.  The claimant was born on *** 1968 and was 37 years old, which is defined as a younger individual age 18-49, on the [January 1, 2006] alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

9.  The claimant has a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

10.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

11.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

4

economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12.  The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision[1] (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 12, tr., at 1110, 1112, 1114, 1116, 1121, 1122.)

### III.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past

---

[1] Although the ALJ's 2015 decision made clear that the remand was limited to the closed period 2006 through 2008, it nonetheless contains this erroneous phrase "through the date of this decision."  As addressed further *infra*, the Commissioner's brief confirms that the first ALJ's decision awarding her benefits from January 1, 2009 forward remains undisturbed and Dunlap has continued to receive those benefits.  (R. 24, PageID #: 2011; *see also* R. 12, tr., at 1108, 1135.)

relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards, and whether substantial evidence supports the ALJ's findings. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*,

321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## V.  ANALYSIS

Dunlap presents the following legal issues for the court's review:

[1.]  Was [the second ALJ's] decision in compliance with the Court's order by not completing the sequential evaluation for 2007?

[2.]  Was [the second ALJ's] application of SSR 83-34 based upon substantial evidence, Ohio law and contrary to the Social Security Act's ("Act") remedial purpose, which is "unusually protective" of claimants?

[3.]  Was [the second ALJ's] decision contrary to law by not giving [the first ALJ's] Step 3's severe hand and arm pain and RFC for 2006-2008 collateral estoppel effect, or accepting his findings as the law of the case?

[4.]  Were [the second ALJ's] Step 3 and RFC findings for 2006 to 2008 contrary to substantial evidence?

[5.]  Did [the second ALJ's] Step 3 and RFC from 2006 to 2008 violate 20 C.F.R. § 404.1527, and fail to provide this Court with meaningful judicial review?

(R. 22, PageID #: 1922-1923.)  As the Commissioner states, the main issue before the court is "whether Plaintiff was entitled to disability benefits during the closed three-year period from January 1, 2006, through December 31, 2008."  (R. 24, PageID #: 2011; *see also* R. 12, tr., at 1108, 1135.)  The Commissioner concedes that the earlier favorable determination that Dunlap is entitled to benefits from January 1, 2009, onward remains undisturbed.  *Id.*

### A.  Sequential Evaluation for 2007

Dunlap asserts that the ALJ did not comply with the court's remand order and failed to complete the sequential evaluation for 2007.  (R. 22, PageID #: 1925.)  Plaintiff's argument,

contained in two succinct sentences, is not persuasive because, although the ALJ's decision

contains an obvious typographic error explained herein, the decision includes a sequential

evaluation that covers 2007.

On remand, the Appeals Council directed the ALJ to consider "whether claimant's work

activity during the years 2006 through 2008 constituted substantial gainful work activity

["SGA"]."  (R. 12, tr., at 1248.)  Following that directive, the ALJ found that the claimant did

engage in SGA during all of 2006 and all of 2008, but not 2007.  The decision, however, then

presents the obvious typographical error when stating "the five-step sequential analysis is

confined to the period beginning on January 1, 2008 [*sic*], and ending on December 31, 2007."

*Id.* at 1108, *see also id.* at 1110.  After determining that Dunlap had SGA for 2006 and 2008 (*id.*

at 1110), the ALJ stated: "The remaining findings address the period(s) the claimant did not

engage in substantial gainful activity."  *Id.* at 1112.  Despite the typographical error, it is

apparent that the decision provides a sequential evaluation for the year 2007.  *See, e.g.*, *id.* at

1108, 1110, 1117 (citing medical evidence from 2007), 1118 (same).  Plaintiff's argument, to the

contrary, is not persuasive.

### B.  Application of SSR 83-34

Dunlap next contends that the ALJ's finding that she engaged in substantial gainful

activity ("SGA") for the years 2006 and 2008 was error, and that the ALJ's application of SSR

83-34 ("Determining whether work is Substantial Gainful Activity—Self-Employed Persons")

lacked substantial evidence.  (R. 22, PageID #: 1925.)  As explained above, if a person is found

to have SGA at step one of the five-step analysis, the analysis need not proceed further.  Dunlap

contends the ALJ's decision on this issue lacked substantial evidence because: 1) the ALJ erred

when calculating her self-employed "countable income," 2) Plaintiff provided substantial

evidence to rebut the ALJ's finding of SGA for 2006 and 2008, and 3) Plaintiff supported her income reductions with substantial evidence.  *Id.* at 1926-27.  None of these arguments is persuasive, however.

SGA determinations for self-employed persons are based on three tests.  First, an individual has engaged in SGA if she has rendered services that are significant to the operation of the business and received a "substantial income" from the business.  SSR 83-34; 20 C.F.R. §§ 404.1575.[2]  This court has summarized SSR 83-34 in an earlier decision:

> Social Security Rule ("SSR") 83-34, upon which the ALJ relied for this ruling, addresses the question of whether a claimant who is self-employed has engaged in SGA over a twelve month period.  SSR 83-34 sets forth a three-step test for making that determination.  At step one, the ALJ must decide whether the self-employed claimant has engaged in "significant work" involving "substantial income" during the years in question.  If it is a one-person operation, the work is deemed significant.  In determining substantial income, the ALJ must decide the claimant's net income (i.e., ["countable income,"] gross earnings less business and impairment-related work expenses) and then refer to a chart with threshold net-income amounts, above which a claimant is deemed to have engaged in SGA. A finding that a claimant has engaged in SGA at step one of this process eviscerates the need to analyze steps two and three, as well as steps two through five of the disability analysis.

*Ballard v. Astrue*, No. 5:11CV2583, 2012 WL 6554406, at *1 (N.D. Ohio Dec. 14, 2012); *see generally* Social Security Ruling 83-34, 1983 WL 31256; 20 C.F.R. §§ 404.1575(a)(2), 416.975(a).  Further, in determining "countable income," the focus is "what portion of the

---

[2] "A self-employed individual has substantial income from a business if 'countable income' from the business averages more in a month than the monthly amount established for the particular calendar year by the SGA earnings guidelines."  *Mickelson v. Astrue*, No. 09CV003, 2009 WL 4544126, at *2 (W.D. Wis. Nov. 25, 2009) (citing 20 C.F.R. § 404.1575(c)(2); SSR 83–34).  In addition, the second and third tests address the comparability and worth of work, 20 C.F.R. § 404.1575(a)(2), but they are only considered when it "is clearly established that the self-employed person is not engaging in SGA on the basis of [the first test for] significant services and substantial income…."  SSR 83-34(B).  As such, Plaintiff's suggestion that the ALJ erred by not assessing the latter two tests fails because the ALJ reasonably determined Plaintiff met the first test, as demonstrated herein.  (R. 22, PageID# 1927-29.)

individual's income represents the "actual value of work he or she performed," so after finding net-income any "significant amount of unpaid help" and "impairment related work expenses" are also deductible.  SSR 83-34(A)(b)(1).

The ALJ recognized that Dunlap was self-employed from 2006 through 2008, and undertook the analysis under Section 404.1575(a)(2) and SSR 83-34.  (R. 12, tr., at 1111.)  The ALJ noted that Dunlap was self-employed as an attorney solo practitioner, and therefore, pursuant to the governing regulations, rendered services that were significant to the operation of the business.  *Id.,* citing 20 C.F.R. §§ 404.1575(a)(2)(i), (b)(1).  The next determination involved the extent of the claimant's "countable income," beginning with an assessment of the net income of the business, here, the net profit shown on IRS Form 1040, Schedule C.  *Id.,* citing 20 C.F.R. § 404.1575(c)(1).  The court agrees with Plaintiff that SSR 83-34 does not provide that IRS Schedule Cs are sole means of determining countable income (R. 22, PageID #: 1926).  Countable income in this context, however, is generally "gross income less normal business expenses, although certain other expenses may be deductible." *Mickelson v. Astrue*, No. 09CV003, 2009 WL 4544126, at *2 (W.D. Wis. Nov. 25, 2009) (citing 20 C.F.R. § 404.1575(c)).

The ALJ correctly identified two types of deductions permitted from net income before the final determination of the claimant's "countable income."  (R. 12, tr., at 1111.)  The first type is "a deduction for the reasonable value of any significant amount of unpaid help furnished by the claimant's spouse, children, or others."  *Id.*  The second type is "a deduction for 'work-related impairment expenses' not previously included in arriving at the 'net income.'"  *Id.* at 1112.

10

The claimant bears the burden of proof, as the ALJ pointed out, to provide supporting documentary evidence, such as statements and other documents detailing a full accounting of the unpaid help services rendered and work-related impairment expenses.  (R. 12, tr., at 1111-1112; *see* 20 C.F.R. § 404.1576(g).)  The record indicates Dunlap provided the ALJ with a brief in support, which addressed unpaid help and specified certain amounts paid for impairment related work expenses. (R. 12, tr., at 1459-1460.)  The ALJ, however, reasonably concluded that claimant provided insufficient evidence to determine the existence, reasonable monetary value, and extent of any unpaid help, despite receiving an extension of time to do so.  (R. 12, tr., at 1111-1112; *see* 20 C.F.R. § 404.1576(g).)[3]  Moreover, the claimant did not provide any documentary evidence of work-related impairment expenses such as account statements, check stubs, or receipts.  *Id.*  And claimant failed to provide documentary evidence supporting her alleged deductions, beyond a handwritten summary.  *See generally id.* at 1457-1462; 20 C.F.R. § 404.1576(g).  Because Dunlap did not provide any documentary evidence for the permitted deductions, the ALJ found that her net income matched her countable income, which exceeded the threshold amounts demarcating SGA; and, consequently, the ALJ found claimant engaged in SGA in 2006 and 2008.  *Id.* at 1112.  Plaintiff has not shown that the ALJ erred in reaching that determination.

---

[3] Plaintiff suggests that ALJ's decision was contrary to Ohio law because it noted that "a mutual duty of support flows between spouses, parents and children…[;]" "duties in furtherance of this obligation would be 'miscellaneous duties[;]'" and that much of the undocumented assistance Plaintiff identified in Exhs. 19E and 32E fell under such "miscellaneous duties."  (R. 12, PageID# 1172; R. 22, PageID# 1927.)  The court need not address this argument, because it was an alternative finding by the ALJ—the ALJ first found Plaintiff failed to support her burden of proof with sufficient evidence to support her alleged deductions.  Having reviewed the record and pertinent exhibits, the undersigned cannot find that the ALJ erred by holding Plaintiff to the burden of proof and finding it was not satisfied.

Dunlap contends the ALJ had a heightened duty to develop the record due to her *pro se* representation. (R. 22, PageID #: 1928). Such an argument is unavailing on this record because claimant, a licensed attorney, represented herself in the administrative proceedings, submitted numerous written factual and legal arguments; and, as in *Wilson*, "the hearing transcript discloses her grasp of the proceedings and the adequacy of her case presentation to the ALJ." *Wilson v. Commissioner*, 280 Fed. Appx 456, 459 (6th Cir. 2008).

A finding that a claimant has engaged in SGA at step one of the SSR 83-34 analysis eliminates the need to analyze the second and third tests regarding SGA, as well as steps two through five of the disability analysis regarding years 2006 and 2008. *Ballard*, 2012 WL 6554406, at *1; *Mickelson*, 2009 WL 4544126, at *2; *see generally* S.S.R. 83-34, 1983 WL 31256, at *9. The ALJ, however, found that claimant did not engage in SGA during 2007—a determination not challenged by Plaintiff. (R. 12, tr., at 1112; *see also* R. 22, PageID #: 1925 (uncontroverted that claimant did not engage is SGA for 2007).)

The court finds the ALJ's application of SSR 83-34 was proper and based upon substantial evidence.

## C. Collateral Estoppel

Dunlap's third contention asserts the ALJ's decision was erroneous for not not giving the first ALJ's Step 3 determination of severe hand and arm pain, and the RFC for 2006-2008, collateral estoppel effect. (R. 22, PageID #: 1930, citing *Dennard v. Secretary, HHS*, 907 F.2d 598 (6th Cir. 1990).) The Commissioner argues that collateral estoppel is not applicable for a variety of reasons, but most important is that the prior ALJ decision regarding 2006 to 2008 was vacated. (R. 24, PageID #: 2020.)

Under the doctrine of collateral estoppel, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982) (internal citations omitted).  In the Social Security context, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  *Drummond v. Commissioner*, 126 F.3d 837, 842 (6th Cir. 1997) (citing *Dennard* and other cases).

Here, however, the Appeals Council "vacate[d] the final decision of the Commissioner of Social Security with regard to the period prior to January 1, 2009," and remanded for further proceedings.  (R. 12, PageID #: 1247, *see also id.* at 1232.)  In light of this, the October 14, 2010, decision of the first ALJ was not a "final decision" concerning Dunlap's entitlement to benefits for the period 2006 to 2008, because it was vacated and remanded.  *See, e.g.*, *Davis v. Callahan*, 145 F.3d 1330, 1998 WL 228056, at *2 (6th Cir. 1998) (TABLE, text in WESTLAW) ("Under *Dennard*, collateral estoppel applies to a prior final decision.  In this case, the Appeals Council vacated the 1992 decision.  Therefore, the 1992 decision was not a final decision and *Dennard* is not applicable."); *Shope v. Commissioner*, No. 2:14CV2055, 2015 WL 3823165, at *4 (S.D. Ohio June 19, 2015), adopted by, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015); *Zayid v. Commissioner*, No. 1:13CV54, 2014 WL 517466, at *6 (N.D. Ohio Feb. 7, 2014).  Consequently, *Dennard* is inapplicable and collateral estoppel does not mandate the adoption of the first ALJ's Step 3 determinations and RFC as to the 2006 to 2008 period.

In the alternative, Dunlap argues that the "law of the case" doctrine precludes revisiting the first ALJ's findings.  (R. 22, PageID #: 1930.)  "Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of

13

that same litigation." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)).  The vacation of the earlier ALJ decision has a similar impact on the applicability of the law of the case doctrine.  Where an earlier decision has been vacated, the law of the case doctrine does not apply.  *See, e.g.*, *Johnson v. Board of Educ. of City of Chicago*, 457 U.S. 52, 53-54 (1982) (per curiam); *Amelkin v. McClure*, 330 U.S. 822, 828-829 (6th Cir. 2003), *cert. denied,* 540 U.S. 1050 (2003) (citing cases); *Bell*, 988 F.2d at 250-251.

Dunlap's third contention, that the first ALJ's Step 3 determination and RFC for 2006-2008 should be given collateral estoppel effect, is without merit.

D.  Step Three and Residual Functional Capacity ("RFC") Findings for 2006 to 2008

Dunlap's final two claims question the second ALJ's Step Three and RFC findings for the 2006 to 2008 period.  (R. 22, PageID #: 1923, 1930-1933.)  The claimant contends that these findings are not supported by substantial evidence, and that the ALJ did not properly consider the regulatory elements in 20 C.F.R. § 404.1527.  *Id.*

1.  Step Three Impairments

At the third step of the sequential analysis, it is the claimant's burden to show that her impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, in order to be deemed disabled.  *Wilson*, 378 F.3d at 548; *Walters*, 127 F.3d at 529; 20 C.F.R. § 404.1520(a)(4)(iii).

Dunlap contends that substantial evidence supports a finding of disability from 2006 to 2008 based upon the medical evidence and the testimony of the medical expert at the first hearing, Daniel L. Schweid, M.D.  (R. 22, PageID #: 1931; *see generally* R. 12, tr., at 65-72 (June 10, 2010, hearing testimony.))  It is well-recognized that an ALJ must generally give the

greatest deference to the opinions of a claimant's treating physicians over those of non-treating physicians. *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  After a treating source, next in the hierarchy are the opinions of examining physicians and psychologists. *Schumpert v. Commissioner*, 310 F. Supp. 3d 903, 908 (S.D. Ohio 2018).  A physician who has merely reviewed the medical records is "on the lowest rung of the hierarchy of medical source opinions." *Id.* (quoting *Snell v. Commissioner*, No. 3:12CV119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)).  Dr. Schweid's testimony as a non-examining medical expert would fall into this latter category.  Although an ALJ may consider the opinion of such a medical expert, the ALJ is not bound by the opinions. *Blanton v. Soc. Sec. Admin.*, 118 Fed. Appx 3, 7 (6th Cir. 2004) (citing *Reynolds v. Secretary, HHS*, 707 F.2d 927, 930 (6th Cir. 1983)).

In addition, while the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single piece of evidence to support her  decision.  *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004); *Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (citing *Thacker*).  "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, No. 04-5021, 2004 WL 2633448, at *6 (6th Cir. Nov. 18, 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

Here, the second ALJ stated at the hearing that she had the transcript of the earlier hearing (at which Dr. Schweid testified), but she did not mention Dr. Schweid's testimony in her discussion of opinion evidence.  *See* R. 12, tr., at 1119-1120, 1138-1139.  After reviewing the

opinion evidence, the ALJ stated:  "No other treating or examining physician or psychologist, or other medical or mental health provider rendered an opinion relevant to the formulation of the residual functional capacity."  *Id.* at 1120.  While it is true that Dr. Schweid was not a "treating or examining physician," nor perhaps a "provider" strictly speaking, nevertheless his opinion should have been evaluated.  *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007) (ALJ must evaluate each medical opinion in the record); 20 C.F.R. § 404.1527(b)).  However, considering the content of Dr. Schweid's testimony, and his status as a non-examining medical expert, the court finds that the failure to specifically discuss Dr. Schweid's opinion is harmless error.  The ALJ's decision  determined that same medical conditions the medical expert testified about were indeed severe impairments that claimant had, with the exception of carpal tunnel syndrome; and, the ALJ's RFC incorporated most of the opined limitations.

The claimant asserts that Dr. Schweid testified to the existence of medical evidence of irritable bowel syndrome [IBS]; carpal tunnel syndrome; migraine headaches; major depression, recurrent; and panic disorder with agoraphobia.  (R. 22, PageID #: 1931, citing MER; *see generally* R. 12, tr., at 65-72.)  The second ALJ decision found claimant's severe impairments to be largely identical to those identified by Dr. Schweid: migraine headaches, chronic IBS, adjustment disorder with mixed anxiety and depressed mood, major depressive disorder-recurrent, with psychotic features, and panic disorder with agoraphobia.  (R. 12, tr., at 1112.)  But it appears the doctor mis-recalled the record regarding carpal tunnel syndrome.  The doctor testified that "the other thing she's had is carpal tunnel syndrome on the left side, that's Exhibit 28F from Dr. Miller.  Based on an EMG nerve conduction test, October 6th of '08."  (R. 12, tr., at 68-69.)  The cited record, however, documents a follow-up appointment with Dr. Hugh Miller on January 15, 2009, and states that "An [October 14, 2008] EMG of the left upper extremity is

16

normal.  There is no electromyographic evidence of a carpal tunnel syndrome or a cervical radiculopathy."  (R. 12, tr., at 968, 981; Exh. 28F/3-4, 17.)[4]  As such, the exhibit cited in the doctor's testimony does not support a finding of carpal tunnel syndrome.

Moreover, the second ALJ decision assessed an RFC finding with some of the same limitations opined by Dr. Schweid.  Although the first ALJ decision is not at issue here, the first ALJ's assessment of Dr. Schweid's opinion was as follows:

> The medical expert, Dr. Schweid, testified that the claimant's anxiety restricts her to low stress tasks, but that she cannot sustain work in a competitive environment. He further testified that the claimant is not able to make rapid repetitive movements with her left hand and needs continuous restroom access.  He testified that the two main obstacles to her being able to work are her frequent migraines and the bouts of IBS.  He testified that it is extremely difficult to work through the type of pain that is associated with a migraine.  The undersigned affords this opinion substantial weight as to the claimant's abilities from January 1, 2009, as it is consistent with the record since that date and supported by the medical record.[5]  Also, Dr. Schweid had the benefit of reviewing the entire record and hearing the claimant testify.  However, the undersigned gives little weight to his opinion regarding the claimant's abilities in respect to years prior to 2009, as the claimant was working at an SGA level in a competitive environment.

(R. 12, tr., at 23.)  The second ALJ decision assessed an RFC finding that the claimant could perform light work, but in a low stress environment.  *Id.* at 1116.  That RFC also contained the limitation that claimant "may not engage in rapid, repetitive movements with the left [hand]." *Id.*  Dr. Schweid's opinion that claimant cannot perform work in a competitive environment is a decision reserved to the Commissioner; and, the doctor's statement is not entitled to any

---

[4] The record does note Plaintiff reported numbness in her left upper extremity from the shoulder to hand with associated pain from her elbow to hand.  (R. 12, tr., at 974, Ex. 28F/10.)  But the record clearly states in Exh. 28F, including the above-referenced EMG Study and Nerve Conduction Study Impressions, that "there is no conduction evidence of a carpal tunnel syndrome or an ulnar neuropathy."  *Id.* at 980, Exh. 28F/16; *see also* 972, 28F/8.

[5]  As already noted above, the favorable determination that Dunlap is entitled to benefits from January 1, 2009, onward remains undisturbed.  (R. 12, tr., at 1247; R. 24, PageID #: 2011.)

17

deference.  20 C.F.R. § 404.1527(d); *Schuler v. Commissioner*, No. 03-3734, 2004 WL 2030280, at *4 (6th Cir. Sept. 8, 2004).

2.  RFC Analysis

Dunlap also asserts that the second ALJ "does not mention, much less explain, why she rejected [the first ALJ's] Step 3 and RFC findings for Plaintiff, and Dr. Schweid's expert testimony."  (R. 22, PageID #: 1932.)  She claims that the decision violates 20 C.F.R. § 404.1527, and precludes meaningful judicial review.  *Id.*  Section 1527 governs the treatment of opinion evidence, and the issue of Dr. Schweid's testimony has been addressed, above.  In addition, the earlier ALJ decision was vacated, as to the 2006 to 2008 period, and remanded with specific instructions, discussed *infra*.

A claimant's RFC is the most she can still do despite her limitations.  20 C.F.R. § 404.1545(a).  The ALJ has the responsibility for reviewing all the evidence in making her determinations.  20 C.F.R. § 404.1527(b).  Although the ALJ reviews and considers all the evidence before her, the responsibility for assessing the claimant's RFC rests with the ALJ.  20 C.F.R. § 404.1546(c).

Further, claimant's argument must be considered in the context of the parameters of the Appeals Council's remand order.  The Sixth Circuit has provided the following guidance on this issue:

> When the Appeals Council issues a remand order to an ALJ, the ALJ must "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 404.977(b).  When a remand order contains detailed instructions concerning the scope of the remand and the issues to be addressed, "further proceedings in the trial court or agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is [sic] error."  *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967); *see also Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 944 (E.D. Mich. 2017).

18

*Wilson v. Commissioner*, 783 Fed Appx 489, 496-497 (6th Cir. 2019) (parenthetical omitted).  In reference to the claimant's RFC, the remand order stated that, if the ALJ found that the claimant did not perform SGA during the period prior to January 1, 2009, the ALJ will:

> Give consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitation (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).

(R. 12, at 1248.)  The ALJ assessed 2006, 2007, and 2008, found that claimant did not perform SGA during 2007 (only), and further addressed that year.  (R. 12, tr., at 1108, 1112.)

The ALJ did as directed by the Appeals Council; the second ALJ decision demonstrates substantial compliance with the Appeals Council's directions.  The decision discussed extensively  the claimant's diagnosed medical conditions, physical examinations, prescribed medications, treatment, medical opinions, symptoms and resulting limitations, with citations to the record for each item discussed.  *See generally* R. 12, tr., at 1116-1121.  The ALJ specifically discussed medical opinion evidence and the support for the assessed limitations.  *Id.* at 1119-1120.  The court finds that the ALJ provided the necessary consideration; and, the ALJ provided enough evidence of record to support the RFC and the assessed limitations, pursuant to the Appeals Council's remand order.  *See, e.g.*, *Thomas v. Astrue*, 677 F. Supp. 2d 300, 307 (D.D.C. 2010).  The court finds that the claimant's allegation of error is without merit.

## VI. SCOPE OF THE ALJ'S 2015 DECISION

Although it is not a major focus of her brief, the claimant notes that the ALJ's August 2015 decision improperly applied the disability evaluation from January 1, 2006, "to the date of that decision."  (R. 22, PageID #: 1922.)  That latter phrase is an overstatement that in isolation would justify an additional remand.  But as referenced above, the Commissioner readily

19

acknowledges that this is a misunderstanding arising from a typographical error, and that claimant has not asserted that her benefits starting January 1, 2009, have been discontinued or altered in any way. (R. 24, PageID #: 2011 n.1.) The claimant's Reply Brief does not press the issue further. *See generally* R. 26.

The undersigned reads the 2015 decision as a whole and finds it accords with the Appeals Council's remand order, that is, to address issues solely in the period 2006 through 2008. (R. 12, tr., at 1108, 1135, 1232-1233, 1247-1248.) The ALJ stated at the hearing that "it's been remanded to us for further consideration of three years . . . only, those three years being – starting January 1st, 2006, and running through December 31st, 2008." *Id.* at 1135; *see also id.* at 1139. The decision itself references the three year period in a number of instances, *see, e.g., id.* at 1108 ("January 1, 2006 through December 31, 2008"), 1111 ("the period relevant to this decision [2006-2008]") (bracket in the original), 1112 (discussing SGA for 2006, 2007, and 2008 only), 1117-1118 (discussing medical evidence from 2006-2008). After determining Dunlap had SGA for 2006 and 2008 (R. 12, tr., at 1110), the ALJ focused the remaining decision on 2007, stating: "The remaining findings address the period(s) the claimant did not engage in substantial gainful activity." (R. 12, tr., at 1112.)

However, it is indisputable that the ALJ's 2015 decision also states: "The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g))." (R. 12, tr., at 1122; *see also id.* at 1109.) While the undersigned views this as a drafting error, which has not altered Plaintiff's previous disability finding starting January 1, 2009 and corresponding benefits, the court notes that Plaintiff and her counsel have the opportunity to file an objection disputing the

Commissioner's assertion that her benefits have not been affected and requesting a remand to clarify the scope of that decision.

## VII.  CONCLUSION

For the foregoing reasons, the undersigned finds that the ALJ's decision regarding 2006 to 2008 is supported by substantial evidence.  Therefore, the Commissioner's final benefits determination for that three-year closed period should be affirmed.


Dated:   March 13, 2020               /s/ David A. Ruiz
                                      David A. Ruiz
                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72(a); LR 72.3(a).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).